IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**MARINER HEALTHCARE, INC., et al.**                                                                            **PLAINTIFFS**

**v.**                                 **No. 4:04cv263**

**JACQUELINE D. KING, INDIVIDUALLY
AND ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF HENRY TAYLOR**                          **DEFENDANT**

## ORDER

This cause comes before the court on the motion of plaintiffs Mariner Health Care, Inc. et al ("Mariner") to compel arbitration. Defendant Jacqueline King has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is not well taken and should be denied.

Plaintiffs filed the instant complaint, pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 4, to compel the arbitration of claims raised against them by King in a separate state court action. The underlying dispute giving rise to this arbitration action arose out of injuries allegedly suffered by decedent Henry Taylor during his residency at the Greenwood Health and Rehabilitation facility. King filed a tort action against the arbitration plaintiffs herein on August 12, 2004, and plaintiffs filed the instant complaint to compel arbitration on August 30, 2004.

## LAW

Congress provided in the Federal Arbitration Act ("FAA") that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.

§ 2 (1999). Section Four of the FAA specifically contemplates that parties aggrieved by another party's failure to arbitrate under a written contract may file a petition in a United States District Court to compel that party to arbitrate their claims. 9 U.S.C. § 4 (1999). In addition, the FAA expresses a strong federal policy in favor of arbitration, and any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 857, 79 L.Ed.2d 1 (1983); Mouton v. Metropolitan Life Ins. Co., 147 F.3d 453, 456 (5th Cir. 1998).

The Fifth Circuit has directed courts to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. R.M. Perez & Assocs., Inc. v. Welch, et al., 960 F.2d 534, 538 (5th Cir. 1992). First, the court must determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996). The burden of proving whether the arbitration agreement actually exists rests on the party seeking to invoke the agreement. Fleetwood Enters., Inc. v. Garkamp, 280 F.3d 1069, 1070, n. 5 (5th Cir. 2002)("[T]he federal policy favoring arbitration does not extend to a determination of who is bound").

Once the court finds that the parties agreed to arbitrate, it must then consider whether any federal statute or policy renders the claims nonarbitrable. Perez, 960 F2d. at 538. In conjunction with this inquiry, a party seeking to avoid arbitration must allege and prove either that the arbitration provision itself was a product of fraud or coercion or that another ground exists at law or equity that would allow the parties' contract or agreement to be revoked. Sam Reisfeld & Son

Import Co. v. S.A. Eteco, et al., 530 F.2d 679, 680-81 (5th Cir. 1976).

A party must challenge the " 'making' of the agreement to arbitrate" itself to create a jury question, while allegations regarding the contract as a whole must go to arbitration. Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 n.9 (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967)). See also Haynsworth v. The Corporation, 121 F.3d 956, 963 (5th Cir. 1997)(holding that arbitration clauses are not rendered unenforceable by allegations of fraud unless inclusion of arbitration clause itself was product of fraud or coercion).

## ANALYSIS

This case presents arbitration issues identical to those in Mariner v. Tressie Green, No. 4:04cv246, wherein this court very recently denied Mariner's complaint to compel arbitration against a defendant similarly situated to the defendant herein. As in Green, the issue before the court in this case is whether plaintiffs should be permitted to compel arbitration even though the decedent Henry Taylor did not sign the arbitration agreement at issue herein. Taylor's daughter Jacqueline King did, in fact, sign the agreement, but defendant notes that no power of attorney or similar document had been signed which might permit her to sign on her father's behalf.

This court analyzed the identical arbitration issues in Green as follows:

> In arguing that the arbitration agreement should not be enforced, the Estate relies chiefly on two recent unpublished opinions by Judge Bramlette in the Southern District of Mississippi, both of which appear factually similar to the case at bar. In Mariner Health Care, Inc. v. Estate of Rhodes, Civil Action 5:04cv217 (September 27, 2005), Judge Bramlette was confronted with a case (also brought by Mariner) in which an elderly woman named Sylvester Rhodes was admitted to a nursing home with a family member signing the relevant paperwork, including the arbitration clause which Mariner had sought to invoke. It was undisputed that Rhodes did not sign the agreement and apparently would not have been competent

3

to do so.  Mariner, however, argued that Rhodes became bound by the agreement because her daughter Katherine signed as her legal representative, while the Estate argued that Katherine Rhodes lacked the legal capacity to bind her mother to an arbitration agreement.

Judge Bramlette reasoned that in order to be able to bind her mother to the arbitration agreement, Mariner needed to show that Katherine Rhodes had authority to act as Sylvester's agent.  Judge Bramlette then considered the three potential grounds for finding agency authority.  The first such ground was the existence of express or implied authority, which was wholly lacking, as no documentation or evidence had been provided by Mariner to show that Sylvester gave her daughter authority to act as her agent for the purposes of signing an arbitration agreement.

Next, Judge Bramlette considered whether any apparent authority existed which might have given Katherine Rhodes the power to bind Sylvester to the arbitration agreement.  Judge Bramlette noted that apparent authority is to be "determined from the acts of the principal and requires reliance and good faith on the part of the third party." Terrain Enters., Inc. v. Western Casualty & Surety Co., 774 F.2d 1320, 1322 (5th Cir. 1985)(citing Tarver v. J.E. Sanders Cotton Mill, 192 So.2d 17 (Miss. 1939)).  Mariner had alleged no act on the part of Sylvester Rhodes indicating that she authorized Katherine to act as her agent in the matter of the arbitration agreement, and so Judge Bramlette held that Mariner had failed in its burden to show that apparent authority existed.

Finally, Judge Bramlette considered whether any statutory authority existed which might allow a surrogate to make healthcare decisions for an incompetent or incapacitated patient absent a pre-authorized agency relationship.  He noted that Miss. Code Ann. § 41-41-211 did grant certain persons the authority to make healthcare decisions on behalf of a patient without the capacity to make such decisions for herself.  Judge Bramlette, after careful review of § 41-41-211, concluded that the statute limited its grant of authority to allowing surrogates to make "health-care decisions" for the patient, and binding legal decisions regarding waiver of the patient's right to a jury trial did not fall under the rubric of "health-care decisions."  Although there were no Mississippi cases directly on point to support Judge Bramlette's reasoning, he did find persuasive authority from two other cases: Pagarigan v. Libby Care Center, Inc., 120 Cal. Rptr. 2d 892 (Cal. Ct. App. 2002)(applying California law granting surrogate decision-making power) and Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296 (Fla. Dist. Ct. App. 2005)(applying similar Florida law).  Judge Bramlette also considered In re Ledet, 2004 WL 2945699 (Tex. App. Dec. 22, 2004) which came to a contrary conclusion, but concluded that the Mississippi law was more susceptible to the logic of Pagarigan and Blankfeld.  Consequently, even if Katherine Rhodes was considered a surrogate decision-maker under § 41-41-211, her authority to make "health-care decisions" would not extend to signing an arbitration agreement binding on her mother.

4

Judge Bramlette came to an identical conclusion in Mariner Health Care, Inc. v. Guthrie, 5:04cv218 (S.D. Miss. August 24, 2005).

Applying Judge Bramlette's cogent analysis to the case at bar, certain facts become relevant. First, Mariner has failed to provide any evidence that Susie Green conveyed to Tressie Green any express or implied grant of authority. Second, while Mariner points to several other legal documents which Tressie signed on behalf of Susie as demonstrating apparent authority, Mariner ignores the fact that apparent authority is to be "determined from the acts of the principal and requires reliance and good faith on the part of the third party." Terrain Enters., Inc, 774 F.2d at 1322. Third, Mariner notes Judge Bramlette's rulings in Rhodes and Guthrie but argues simply that those cases were wrongly decided because Judge Bramlette declined to follow other cases in other states which applied other laws to reach contrary results.

However, in support of its position, Mariner cites only two cases which might constitute more persuasive authority than Rhodes and Guthrie. In Vicksburg Partners, L.P. v. Stephens, the Mississippi Supreme Court held that the estate of the late Leroy Taylor was required to submit its wrongful death claim to arbitration as a result of an arbitration agreement signed when Taylor entered a nursing home. 911 So.2d 507, 522 (Miss. 2005). However, the Court finds that Vicksburg Partners is distinguishable for the case at bar. In Vicksburg Partners, both the decedent and his daughter and administratrix signed the relevant arbitration agreement. Vicksburg Partners, 911 So.2d at 510. Consequently, the Supreme Court was not confronted by the agency questions raised by Rhodes, Guthrie and the case at bar, where none of the actual nursing home patients signed the agreements.

Finally, Mariner also relies on a two-page order from Judge Margaret Carey-McRay of the Washington County Circuit Court granting a motion to compel arbitration under facts facially similar to the case at bar because the signatory to the arbitration agreement (who was the daughter of the nursing home patient at the center of the suit) had held herself out for thirteen years as having apparent authority to act on her father's behalf. Moody v. Mississippi Care Center, Cause No. CI2005-9 (Washington County Cir. Ct., Aug. 10, 2005). Consequently, the signatory was equitably estopped from arguing that no agency relationship existed between herself and her father. The Court notes that Judge Carey-McRay did not address the agency issue as thoroughly as Judge Bramlette, instead ruling on equitable estoppel grounds. The Court also notes that Judge Carey-McRay based her ruling on the daughter's conduct over the course of her father's thirteen-year stay in the nursing home. In the case at bar, however, Tressie Green signed the first arbitration agreement in February of 2002, and she filed her state-court action on August 24, 2004. This is obviously substantially less than the thirteen years that the daughter in Moody spent acting with apparent authority.

Green, slip op. at 3-6.

As in Green, the Court is persuaded that Judge Bramlette's analysis is applicable to the instant case. Indeed, the court could scarcely reach a differing conclusion, given that the briefs and arguments submitted by plaintiffs in this case are virtually identical to the ones which they submitted in Green. Under the facts before the Court, Mariner has failed in its burden to show that Jacqueline King had authority to sign away her father's legal right to a jury trial in an arbitration agreement. Accordingly, no valid arbitration agreement exists between the Estate and Mariner. The motion to compel arbitration [48-1] is DENIED and this case is DISMISSED. A separate order to that effect shall issue this day.

This is the 19th day of June, 2006.

       **/s/ Michael P. Mills**
       **UNITED STATES DISTRICT JUDGE**